UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHRYSTOPHER LEE,**

    Plaintiff,

v.                                                                 Civil Action No. **3:11CV135**

**HAROLD W. CLARKE**, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Chrystopher Lee, with counsel, brings this 42 U.S.C. § 1983 action. Mr. Lee is a Muslim inmate incarcerated in Sussex I State Prison ("Sussex I").[1] Mr. Lee claims Defendants[2] violated his rights to the free exercise of his religion and to equal protection. Defendants have moved for summary judgment on the ground that Mr. Lee failed to exhaust his administrative remedies prior to initiating the present action. On August 3, 2011, the Court heard oral argument on the motion for summary judgment. For the reasons that follow, the motion for summary judgment will be granted.

---

[1] Previously, Mr. Lee filed a complaint concerning his incarceration at the Nottoway Correctional Center ("NCC"). After the Court dismissed all claims in that action, the Court granted Mr. Lee permission to file an amended complaint concerning the conditions of his confinement at Sussex I. *See Lee v. Gurney*, No. 3:08cv99, 2010 WL 5113782, at *11 (E.D. Va. Dec. 9, 2010). When Mr. Lee, with counsel, filed an Amended Complaint concerning the conditions at Sussex I, the Court determined the Amended Complaint should proceed as a new action. Therefore, the parties refer to the complaint in this action as the Amended Complaint.

[2] In the complaint presently before the Court, Mr. Lee names as Defendants: Harold W. Clarke, Director of the Virginia Department of Corrections ("VDOC"); John M. Jabe, Deputy Director of Operations for the VDOC; A. David Robinson, Regional Director for the Eastern Region of the VDOC; and Loretta K. Kelly, Warden of Sussex I.

## I. LEE'S GROUNDS FOR RELIEF

Mr. Lee asserts that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim I | Defendants violated Mr. Lee's right to the free exercise of his religion under the First Amendment[3] because:<br>A. They suspended all Juma[4] Prayer services for one month beginning on July 2, 2010;<br>B. They imposed arbitrary restrictions during in-pod recreation. Specifically, during in-pod recreation Mr. Lee is prohibited from: (1) taking his Qu'ran into the pod;[5] (2) engaging in individual prayer; and (3) engaging in group Salat Prayer.[6] |
| Claim II | Defendants violated Mr. Lee's rights under the Equal Protection Clause.[7] Although Christian inmates are allowed to hold hands and pray during in-pod recreation, Mr. Lee has not been allowed to engage in Salat Prayer during in-pod recreation. |
| Claim III | Defendants violated Mr. Lee's right to religious exercise under the Religious Land Use and Institutionalized Person's Act[8] ("RLUIPA").<br>A. They suspended all Juma Prayer services for one month beginning on July 2, 2010;<br>B. They imposed arbitrary restrictions during in-pod recreation. Specifically, during in-pod recreation Mr. Lee is prohibited from: (1) taking his Qu'ran into the pod; (2) engaging in individual prayer; and (3) engaging in group Salat Prayer. |

---

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[4] "Juma Prayer is a congregational prayer that observant Muslims hold every Friday in lieu of the Noon Prayer and attendance at this prayer is obligatory." (Am. Compl. ¶ 8.)

[5] Although an inmate can read library books during in-pod recreation, the library does not provide any religious reading materials. (Am. Compl. ¶¶ 29, 30.)

[6] Salat is a prayer for forgiveness that Mr. Lee is obliged to pray five times per day. *See* *See Lee v. Gurney*, No. 3:08cv99, 2010 WL 5113782, at *2 (E.D. Va. Dec. 9, 2010).

[7] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[8] 42 U.S.C. § 2000cc-1(a)(1)–(2).

Mr. Lee requests compensatory and punitive damages with respect to Claims I and II. Mr. Lee further requests that the Court enter an injunction against Defendants Clarke and Jabe "ordering that they forthwith promulgate a system wide Policy on Muslim Religious Observance and that the policy submitted, Exhibit 1, be used as a guide for such policy." (Am. Compl. 11; *see* Am. Compl. Ex. 1.) Mr. Lee further requests that the Court order Defendants Clarke, Jabe, and Robinson "to cease and desist from enforcing the present policy of prohibiting the plaintiff and other Muslim inmates from engaging in individual and group Salat in the pod during rec time and further enjoining them from prohibiting plaintiff from bringing or using religious materials otherwise allowed to him onto the common area of the pod during rec time." (Am. Compl. 11–12.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

(*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Here, Defendants contend that Mr. Lee's claims must be dismissed because Mr. Lee failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is an affirmative defense, Defendants shoulder the burden to plead and prove lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their motion, Defendants have tendered an affidavit from A. Fowlkes-Miller[9] and a copy of the pertinent VDOC regulations pertaining to the grievance system. Mr. Lee has responded by submitting affidavits from Carroll Abdul Malik, the President of the Muslim Chaplain Services of Virginia ("MCSVA") and from Asghar Goraya, the Executive Director of MCSVA. In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motion for Summary Judgment.

## III. SUMMARY OF FACTS

### A.   VDOC's Grievance Procedure

The VDOC maintains a grievance procedure for resolving inmate complaints. The pertinent VDOC regulations require that, before submitting a formal grievance, the inmate must make a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Defs.' Mem. Supp. Summ. J. Ex. 1 ("Fowlkes-Miller Aff.") Encl. A § 866.1.V.) Generally, this requires an inmate to file an

---

[9] Ms. Fowlkes-Miller oversees the grievance system at Sussex I.

informal complaint form. If that resolution effort fails, the inmate must initiate a regular grievance by filling out a standard form. (*Id.* § 866.1.VI.A.2.) "The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Warden/Superintendent's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

There are up to three levels of review for a regular grievance. (*Id.* § 866.1.VI.C.) The warden or superintendent of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the VDOC Regional Director, the VDOC Health Services Director, or the VDOC Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

### B. Lee's Grievances Filed at Sussex I

On April 27, 2010, Mr. Lee was transferred from NCC to Sussex I. *Lee v. Gurney*, No. 3:08cv99, 2010 WL 5113782, at *1 (E.D. Va. Dec. 9, 2010). Since his arrival at Sussex I, Mr. Lee has filed three regular grievances. (Fowlkes-Miller Aff. ¶ 5.) On June 7, 2010, Mr. Lee filed a regular grievance wherein he complained that he was not allowed to attend Juma services because he was housed on the structured living pod.[10] (Fowlkes-Miller Aff. ¶ 5.) Mr. Lee's two

---

[10] In response to this grievance, prison officials informed Mr. Lee that "offenders in this housing assignment are not permitted to participate in group religious services, but he could practice his beliefs individually and the Chaplain can make available religious material." (Fowlkes-Miller Aff. ¶ 5.)

other grievances dealt with the confiscation of his trimmers and a broken personal CD player. (Fowlkes-Miller Aff. ¶ 5.) None of Mr. Lee's regular grievances pertain to his present claims.

### C. Lee's Evidence

Mr. Lee "concedes that he did not file a 'regular grievance' with regard to the claims set forth in the Amended Complaint." (Pl.'s Mem. Opp'n Mot. Summ. J. 1.) Nevertheless, on July 22, 2010, three members of the Board of Directors of MCSVA—Mr. Malik, Mr. Goraya, and Mr. El-Amin—met with Warden Kelly to discuss the incident that occurred on July 2, 2010, which resulted in the suspension of Juma Prayer for the next four Fridays. (Pl.'s Mem. Opp'n Mot. Summ. J. Malik Aff. ("Malik Aff.") ¶ 3.) As a result of this meeting, Warden Kelly agreed to resume Juma Prayer services a week earlier than the four-week suspension. (Malik Afff. ¶ 7.)

On August 24, 2010, Mr. Malik sent a letter to Warden Kelly wherein he discussed the suspension of the Juma Prayer services. (Malik Aff. ¶ 4; Pl.'s Opp'n Mem. Opp'n Mot. Summ. J. Ex. 1.) A copy of the letter also was sent to Gene Johnson, who was then serving as Director of the VDOC. (Malik Aff. ¶ 6.)

In September of 2010, Mr. Malik, other members of the MCSVA, and "Christian Chaplain Services of Virginia met with Warden Kelly to discuss the prohibition of individual and group Salat during pod recreational periods at Sussex I." (Malik Aff. ¶ 8.) "Warden Kelly explained that she was following DOC policy and that to her knowledge, this prohibition was not limited to Muslims, but to all religious activities." (Malik Aff. ¶ 10.) Warden Kelly was informed that this policy "produced disparate results because Christian inmates were able to hold hands and pray . . . while Muslim inmates were unable to do this because Islamic prayer rituals require inmates to prostrate themselves . . . which inevitably provoked an immediate response by

corrections officers." (Malik Aff. ¶ 11.) Warden Kelly was not persuaded to make any change in the policy or any allowances for Muslim inmates. (Malik Aff. ¶ 12.) Mr. Malik represents that for the past three years the MCSVA and Christian Chaplain Services of Virginia have not been successful in persuading the VDOC to promulgate system-wide policy on Muslim religious observance. (Malik Aff. ¶¶ 12, 13; Am. Compl. Ex. 1.)

## IV. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Mr. Lee concedes that he did not file a grievance regarding his present claims. (Pl.'s Mem. Opp'n Mot. Summ. J. 1.) Nevertheless, he argues that he satisfied the exhaustion requirement because "he has substantially complied with the purpose for filing a grievance, because the two issues set forth in the Amended Complaint were brought to the attention of the appropriate Department of Corrections authorities before this action was filed." (Pl.'s Opp'n

Mot. Summ. J. 1.) Specifically, Mr. Lee contends the MCSVA's meeting and Mr. Malik's letter satisfied the exhaustion requirement. In support of this position, he cites an unpublished case from the Western District of Virginia that describes the VDOC grievance procedure as, *inter alia*, a "means to identify potential problems and, if necessary, correct those problems in a timely manner." (Pl's Mem. Opp'n Mot. Summ. J. 3 (*quoting Fawley v. Johnson*, No. 7:09-cv-0041, 2011 WL 3240537, at *6 (W.D. Va. July 28, 2011)). The cited authority, however, in no way suggests that an inmate satisfies the exhaustion requirement by having third parties discuss with prison officials the problems that give rise to his claims.

    Mr. Lee's position has been squarely rejected by the courts. As the Supreme Court repeatedly has made clear, if prison officials provide an administrative grievance procedure to address inmate claims, prisoners must use that remedy to exhaust their claims for relief. *Jones*, 549 U.S. at 218 ("Compliance with prison grievance procedures, therefore, is all that is required . . . to 'properly exhaust.'"); *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.") Furthermore, the lower courts consistently have rejected arguments that an inmate has satisfied § 1997e(a) by raising his claims informally when prison regulations designate the established grievance procedure as the proper method for exhausting claims. *See Graham v. Gentry*, 413 F. App'x 660, 664 (4th Cir. 2011) (rejecting inmate's assertion that he complied with § 1997e(a) by informing jail officials of his complaints during a meeting); *Panaro v. City of North Las Vegas*, 432 F.3d 949, 954 (9th Cir. 2005) (rejecting inmate's assertion that he exhausted available administrative remedies simply by

participating in an internal investigation because "federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure"); *Jackson v. Klevenhagen*, 54 F. App'x 591, 591 (5th Cir. 2002) (concluding oral complaints to prison officials are insufficient when inmate did not utilize grievance procedure); *Shephard v. Wilkinson*, 27 F. App'x 526, 527 (6th Cir. 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of §1997e(a) by informally presenting his claims." (*citing Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999))); *Muwwakkil v. Johnson*, No. 7:09CV00318, 2010 WL 3585983, at *3 (W.D. Va. Sept. 13, 2010) (finding inmate's letters to the warden, chaplain, and other officials were insufficient to satisfy the exhaustion requirement). Accordingly, because Mr. Lee has not complied with 42 U.S.C. § 1997e(a), Defendants' Motion for Summary Judgment (Docket No. 5) will be GRANTED.

Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. 735, Defendants request the dismissal *with prejudice* of Claims I.A and III.A pertaining to the suspension of Juma Prayer in July of 2010. (Defs.' Mem. Supp. Mot. Summ. J. 6.) Defendants note that the thirty-day time period for filing a grievance pertaining to this issue has expired. (Fowlkes-Miller Aff. Encl. A § 866.1.VI.A.1.) Mr. Lee has not identified any circumstances "beyond [his] control" that might permit him to file outside that time period. (*Id.* § 866.1.VI.A.1.) Therefore, Fowlkes-Miller swears that any grievance pertaining to Claims I.A. and III.A would be rejected as untimely. (Fowlkes-Miller Aff. ¶ 8.) A dismissal with prejudice may be appropriate "where exhaustion was required but

administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see Van Houten v. Marlett*, 330 F. App'x 161, 162–63 (10th Cir. 2009); *Muwwakkil*, 2010 WL 3585983, at *2–3. Accordingly, Claims I.A and III.A will be DISMISSED WITH PREJUDICE. The remainder of Mr. Lee's claims will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED.

An appropriate Order shall issue.

Date: 8-29-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge